1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

11

12

| | |
|---|---|
| ROBERT JACK Z.,[1] ) | Case No. EDCV 19-01234-AS |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION** |
| ) | |
| v. ) | |
| ) | |
| ANDREW SAUL, Commissioner ) | |
| of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

---

   [1]   Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

**PROCEEDINGS**

2

3        On July 3, 2019, Robert Jack Z. ("Plaintiff") filed a Complaint
4   seeking review of the denial of his applications for Disability
5   Insurance Benefits and Supplemental Security Income by the Social
6   Security Administration.  (Docket Entry No. 1).  The parties have
7   consented to proceed before the undersigned United States Magistrate
8   Judge.  (Docket Entry Nos. 11-12).  On November 19, 2019, Defendant
9   filed an Answer along with the Administrative Record ("AR").  (Docket
10  Entry Nos. 15-16).  On April 29, 2020, the parties filed a Joint
11  Stipulation ("Joint Stip.") setting forth their respective positions
12  regarding Plaintiff's claims.  (Docket Entry No. 21).

13

14       The Court has taken this matter under submission without oral
15  argument.  See C.D. Cal. L.R. 7-15.

16

17       **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

18

19       On August 12, 2015, Plaintiff, formerly employed as a pizza
20  deliverer, solar power sales canvasser, grocery clerk, janitorial
21  custodian, home caregiver and special education teacher's aide (see AR
22  46, 50-52, 252, 260-265, 267), filed applications for Disability
23  Insurance Benefits and Supplemental Security Income, alleging a
24  disability since January 30, 2013.  (See AR 209-18).[2]  Plaintiff's
25  applications were denied, initially on November 24, 2015, and, on
26  reconsideration on April 25, 2016.  (See AR 117-20, 123-27).

27

28  ───────────────
         [2]  The ALJ reported that Plaintiff's applications were filed on
    July 20, 2015.  (AR 17).

On April 24, 2018, Administrative Law Judge John Rolph ("ALJ") heard testimony from Plaintiff, who was represented by counsel, and vocational expert Kent Granite ("VE").  (AR 40-62).  On August 10, 2018, the ALJ issued a decision denying Plaintiff's applications. (AR 17-32).

Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since January 30, 2013, his alleged onset date, through September 30, 2013, his date last insured.  (AR 19-20).  At step two, the ALJ found that Plaintiff had the following severe impairments:  chronic obstructive pulmonary disease/dyspnea on exertion; presbycusis bilateral ears; and mental impairments (variously diagnosed as major depressive disorder, depressive disorder not otherwise specified; adjustment disorder with mixed anxiety and depression; and adjustment disorder with mixed disturbance of emotions/conduct).  (AR 20).[3]  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in the regulations.  (AR 21-23).[4]

---

[3]    The ALJ found that Plaintiff's other impairments -- hyperlipidemia/dislipidemia; history of gastroesophageal reflux disease; hereditary essential tremors; skin lesion of back; brittle nails; cervical radiculitis; enlarged prostate; essential hypertension; right shoulder pain; numerous moles; vitamin D deficiency; thyroid nodule; grief; hypertriglyceridemia; other amnesia; sleep apnea; history of nicotine dependence; erectile dysfunction; urinary frequency/nocturia; benign prostatic hyperphasia with urinary obstruction; onychomycosis; nevus; otitis externa bilaterally; otitis media right ear; abdoniminal bloating; and right hand osteoarthritis with pain -- were nonsevere. (AR 20-21).

[4]    The ALJ specifically considered Listings 2.00 (special senses and speech), 3.00 (respiratory disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma and stressor-related disorders). (AR 21-22).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[5] and found that Plaintiff could perform medium work[6] with the following limitations:

> [Plaintiff] can lift, carry, push and pull up to 50 pounds occasionally and 25 pounds frequently; can stand and/or walk 6 hours in an 8-hour day; can sit 6 hours in an 8-hour day; can stoop, kneel, crouch, crawl and climb ramps and stairs frequently; can climb ladders, ropes and scaffolds occasionally; must avoid more than occasional exposure to extreme cold, heat, humidity, loud noise and irritants (such as fumes, odors, dust, gases, chemicals and poorly ventilated spaces); can perform work tasks that do not require a fine hearing ability; can learn, remember and perform simple, routine and repetitive work tasks which involve simple instructions and which are performed in a routine, predictable and low stress work environment (no rapid production pace tasks or high quota requirements, few work place changes, and no close personal supervision); can attend and concentrate for 2 hours at a time (with normal breaks); and can have occasional contact with supervisors, coworkers and the public. (AR 23-30).

---

[5]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.   See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[6]    "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

1    At step four, the ALJ found that Plaintiff was not able to perform
2    any past relevant work.   (AR 30).   At step five, the ALJ determined,
3    based on Plaintiff's age, education, experience, RFC, and the VE's
4    testimony, that there are jobs that exist in significant numbers in the
5    national economy that Plaintiff can perform.   (AR 31).   Accordingly, the
6    ALJ found that Plaintiff had not been under a disability as defined in
7    the Social Security Act from January 30, 2013, the alleged onset date,
8    through August 10, 2018, the date of the decision.   (AR 32).

9
10   The Appeals Council denied Plaintiff's request to review the ALJ's
11   decision on May 10, 2019.   (See AR 1-5).   Plaintiff now seeks judicial
12   review of the ALJ's decision, which stands as the final decision of the
13   Commissioner.   See 42 U.S.C. §§ 405(g), 1383(c).

14
15                          **STANDARD OF REVIEW**
16

17   This Court reviews the Commissioner's decision to determine if it
18   is free of legal error and supported by substantial evidence.   See
19   Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012).   "Substantial
20   evidence" is more than a mere scintilla, but less than a preponderance.
21   Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).   "It means such
22   relevant evidence as a reasonable mind might accept as adequate to
23   support a conclusion."   Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir.
24   2017).   To determine whether substantial evidence supports a finding,
25   "a court must consider the record as a whole, weighing both evidence
26   that supports and evidence that detracts from the [Commissioner's]
27   conclusion."   Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir.
28   2001)(internal quotation omitted).   As a result, "[i]f the evidence can

5

support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred in failing to properly: (1) consider medical evidence of Plaintiff's physical impairments and the opinions of his mental healthcare providers in assessing Plaintiff's RFC; (2) consider Plaintiff's subjective symptom testimony in assessing Plaintiff's RFC; and (3) determine at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (See Joint Stip. at 4-9, 15-18, 21-23).

## DISCUSSION

After consideration of the parties' arguments and the record as a whole, the Court finds the Commissioner's decision to be supported by substantial evidence and free from material legal error.[7]

**A.   The ALJ's RFC Assessment Is Supported By Substantial Evidence**

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20

_____

[7]   The harmless error rule applies to the review of administrative decisions regarding disability.   See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(An ALJ's decision will not be reversed for errors that are harmless).

C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians, and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(c), 416.913©.

### 1.   Physical Impairments

Plaintiff asserts that the ALJ erred in finding that Plaintiff could perform medium work, based on Plaintiff's chronic obstructive pulmonary disease (COPD), emphysema, insomnia, cervical radiculopathy, and polyarticular osteoarthritis in the right hand which cause pain, shortness of breath and fatigue. Plaintiff contends that "his physical impairments, symptoms and limitations" preclude him from working at a medium level of exertion because he cannot lift up to 50 pounds at any time and stand and/or walk 6 hours out of an 8 hour work day. (See Joint Stip. at 5-8).[8]

---

[8]     The Court will not address Plaintiff's references to hearing loss and abdominal pain (see Joint Stip. at 6-7), because Plaintiff does not allege that the ALJ failed to properly consider evidence of his hearing loss and abdominal pain in determining Plaintiff's RFC or explain how these impairments affected the ALJ's RFC finding with respect to Plaintiff's abilities to lift, stand and walk. Id.

Contrary to Defendant's assertions (see Joint Stip. at 10-11), Plaintiff does not appear to be challenging the ALJ's finding that Plaintiff's impairments of insomnia, tremors, cervical radiculitis, and polyarticular osteoarthritis in the right hand were non-severe (see AR 20-21).

As set forth below, the ALJ properly considered "the combined effects of all medically determinable impairments," including impairments that are not severe, in assessing Plaintiff's RFC. (AR 21; AR 19, citing 20 C.F.R. §§ 404.1520(3), 404.1543, 416.920(e), 416.945 and Social Security Ruling 96-8p).

        a.    *COPD and Emphysema*

The ALJ noted the following evidence of Plaintiff's lung impairments: On August 12, 2015, a social security representative who conducted a teleclaim interview observed that Plaintiff did not have any difficulty with breathing (AR 247-48); a November 20, 2016 stress test revealed that Plaintiff reached a workload of 8.5 metabolic units and did not have chest pain (AR 482, 493); a November 22, 2016 echocardiogram showed left ventricle ejection fraction at 55 percent and normal left ventricle systolic and diastolic function (AR 482, 492); an April 27, 2017 CT scan showed mild centrilobular emphysema, "[m]inimal postinflammatory changes . . . in both apices" and otherwise clear lungs (AR 455); diagnostic testing on November 13, 2017 revealed normal lung volumes and did not support a diagnosis of lung obstruction or lung restriction (AR 457); a January 17, 2018 CT scan showed "[c]entrilobular emphysema, minimal scarring in the lung base, without evidence of extensive interstitial pulmonary fibrosis," "[n]o interstitial edema, congestive heart failure, or other evidence for shortness of breath," and [n]o evidence of any aplasia" (AR 458-59); and physical examinations from November 2013 to February 2018 revealed normal

respiratory findings, with normal inspection, normal ausculation, normal effort, no use of accessory muscles, and normal and clear breath sounds (AR 364 [November 5, 2013], 360-61 [April 2, 2014], 391 [January 22, 2015], 346 [March 31, 2015], 350 [July 15, 2015], 402 [September 24, 2015], 405 [December 11, 2015], 409 [January 11, 2016], 412 [February 11, 2016], 516 [November 7, 2016], 480 [November 16, 2016], 482 [December 12, 2016], 488 [January 10, 2017], 520 [January 31, 2017], 498 [March 16, 2017], 437 [May 24, 2017], 524 [July 6, 2017], 527 [November 8, 2017], 533 [January 22, 2018], and  505 [February 6, 2018]). (AR 24).

The ALJ also noted that Plaintiff's own statements about his ability to exercise refuted Plaintiff's complaints concerning shortness of breath. (See AR 440 [February 26, 2017: although Plaintiff complained of shortness of breath for the past two months, Plaintiff reported he walked the dog 2 to 3 miles per day and that he was able to climb several flights of stairs]; 449 [August 28, 2017:  Plaintiff stated he was having shortness of breath due to a cholesterol medication but that his shortness of breath has improved with another cholesterol medication, and Plaintiff reported he was walking the dog 2 times per week]; and 452 [October 30, 2017:  although Plaintiff complained of increasing shortness of breath "especially on exertion on taking shower" and that he was walking less than usual, Plaintiff reported he was walking the dog 3 times a week]).  (AR 24).

Plaintiff's references to evidence of his complaints of fatigue on May 5 and 13, 2013 and April 2, 2014 (see Joint Stip. at  6), appear to

be related to his depression (see AR 359-60, 363-64, 367), and not to COPD or emphysema.

To the extent that Plaintiff is contending that the ALJ did not consider evidence of Plaintiff's impairments of COPD and emphysema which cause Plaintiff to suffer shortness of breath (see Joint Stip. at 7, citing Progress Notes on November 16, 2016 (AR 480), February 27, 2017 (AR 440), April 24, 2017 (AR 467), May 1, 2017 (AR 443), May 22, 2017 (AR 446-47), August 28, 2017 (AR 449), October 30, 2016 (AR 452), and and CT scans on April 27, 2017 (AR 455) and January 16, 2018 (AR 459)), the record reflects that the ALJ properly considered such evidence in determining Plaintiff's RFC (see AR 24-25).  See Valentine v. Comm'r of Social Security Admin., 574 F.3d 685, 690 (9th Cir. 2009)("[A]n RFC that fails to take into account a claimant's limitations is defective.").

           b.  *Tremors*

The ALJ properly noted the minimal evidence of tremors in the record: "Other examination records confirm at least some tremors in both hands at rest, but other records verify the condition was improved, including with medication."  (AR 21, citing AR 368 [May 13, 2013:  Under review of systems for neurological, "Present - Tremor (doing better with beta-blocker"], 360-61 [April 2, 2014:  Under the physical examination finding for neurological, "Note:  tremors both hands at rest, improved."]).

Although Plaintiff cites to evidence of tremors in his right and left hands at rest, specifically, a History & Physical Report #2 dated November 5, 2013 (AR 363-64), (See Joint Stip. at 6), that report notes that the onset of the tremors "was gradual year(s) ago," Plaintiff described his tremors "as moderate in severity and improving" and stated that the "[s]ymptoms are relieved by movement." (AR 363; see also AR 365 ["Impression: doing better on medication."]). Since this report is consistent with the evidence considered by the ALJ, Plaintiff fails to demonstrate how it would limit his functional capacity further than the ALJ's RFC determination.

Plaintiff also cites to (1) a January 11, 2016, a neurological examination that revealed tremors affecting fine motor skills (AR 409); and (2) a February 11, 2016, change in the medication Plaintiff was taking for his tremors because Plaintiff felt light-headed at times (AR 411, 413). (See Joint Stip. at 6). However, Plaintiff fails to explain how such evidence would have affected the ALJ's RFC determination, particularly with respect to Plaintiff's abilities to lift, stand and walk. See Tacket v. Apfel, 1810 F.3d 1094, 1098 (9th Cir. 1999)("The burden of proof is on the claimant as to steps one to four.").

c.   *Cervical Radiculopathy*

The ALJ noted that, with respect to Plaintiff's complaints of shoulder pain, physical examinations revealed normal gait and posture, full range of neck motion, normal musculature, no skeletal tenderness

or joint deformity, normal extremities and no edema. (AR 368 [May 13, 2013], 364 [November 5, 2013],[9] 360 [April 2, 2014], and 391 [January 22, 2015). (AR 21).

Plaintiff cites to evidence of his complaint of right shoulder pain on January 22, 2015 (see Joint Stip. at 6, citing AR 390 [Office Visit Note, noting "right shoulder pain intermittent, x over 1 year, no assoc w right arm weakness or numbness"), but the ALJ clearly considered such evidence, and Plaintiff has failed to allege how that notation would have affected the ALJ's RFC determination.

d.   *Polyarticular Osteoarthritis in the Right Hand*

The ALJ considered the following evidence concerning Plaintiff's polyarticular osteoarthritis in the right hand: An X-ray of Plaintiff's right hand on December 26, 2017, revealed "at least some osteoarthritis of the right hand" (AR 539), and Plaintiff reported sharp pain in his right hand on December 26, 2017." (See Joint Stip. at 7, citing AR 529, 539).  However, Plaintiff's right hand pain was not ongoing and was directly related to an injury Plaintiff sustained to his right hand during a fall on December 26, 2017. (AR 529 [Office Visit Note dated December 27, 2017: "Context: there is an injury." ...  Additional information: mechanical fall in the dark on to medial aspect of the right hand."]).  Contrary to Plaintiff's assertion, the ALJ took this

---

[9]    Although the ALJ cited to a finding of no bilateral edema on November 5, 2013 (see AR 21, citing AR 365), it does not appear that this finding relates to Plaintiff's right shoulder pain.

12

information into account, noting that months earlier, on March 16, 2017, Plaintiff did not have joint pain and physical examination revealed normal range of motion in the musculoskeletal system (AR 24). (<u>See</u> AR 498).

      e.   *Insomnia*

The ALJ noted that Plaintiff denied having insomnia (<u>See</u> AR 346 [March 31, 2015], 350 [July 14, 2015], 402 [September 24, 2015], 408 [January 11, 2016], 516 [November 7, 2016]), admitted to sleeping well (<u>see</u> AR 447 [May 22, 2017]), and did not have difficulty with nocturnal awakening (<u>see</u> AR 440 [February 27, 2017], 443 [May 1, 2017], 446 [May 22, 2017], 449 [August 28, 2017], and 452 [October 30, 2017]).[10]   <u>See also</u> AR 359 [April 2, 2014:   while Plaintiff had difficulty staying asleep, Plaintiff reported that "[t]he insomnia has been decreasing"]). (AR 20).

Although Plaintiff cites to evidence of his complaint of insomnia on February 27, 2017,   (<u>see</u> Joint Stip. at 7, citing AR 440 [February 27, 2017 Progress Note:   "Pt has insomnia.   Problems initiating sleep and maintaining sleep.   Wakes up frequently, every hour.   Has been taking Temazepam.   Has daytime sleepiness.   Takes occasional naps."]); <u>see also</u> AR 443, 446, 449, 452 (May 1, 22, August 28, October 30, 2017 Progress Notes:   same notations), 405 (December 11, 2015 Office Visit

---

[10]   The ALJ stated there was evidence that Plaintiff did not have difficulty initiating sleep (AR 20), but the Court has been unable to locate such evidence in the record.

Note: "Pt has had insomnia for 5 yrs.  Problems with falling and staying asleep."), Plaintiff has failed to allege how such evidence would have affected the ALJ's RFC determination regarding Plaintiff's abilities to lift, stand and walk.

In sum, the ALJ's RFC determination was substantially supported by the medical records of Plaintiff's physical impairments of COPD, emphysema, cervical radiculpathy, polyarticular osteoarthritis in the right hand and insomnia, and Plaintiff has failed to demonstrate with medical findings or diagnostic tests, that these impairments limited his functional capacity more than the ALJ's RFC finding.

2.   Opinions of Lynda Shiatt and Cathy Glassner

Plaintiff asserts that the ALJ erred in failing to properly reject the opinions of Plaintiff's treating mental health care providers, Lynda Shiatt and Cathy Glassner.  (See Joint Stip. at 5, 8-9).[11]

An ALJ must take into account all medical opinions of record.  20

---

[11]   To the extent that Plaintiff cites to evidence of memory loss to support his assertion that "his mental limitations would preclude his ability to perform and persist at full-time competitive employment regardless of the exertional level" (Joint Stip. at 9, citing AR 436 [Progress Note dated May 24, 2017 noting: "Chief complaint is 'memory loss.'  The patient states that lately he has noticed that he is losing his car in a parking lot.  He forgets names of familiar people.  He has been forgetting to take his medication.  He forgets to pay his bills on time.  For directions while driving he uses a GPS.  Also while driving he sometimes gets confused about right turn or left turn. [¶] Symptoms started 5 months ago after his wife died."]), the ALJ clearly considered such evidence (see AR 25-26), and Plaintiff has failed to allege how such notations would have affected the ALJ's RFC determination.

14

C.F.R. §§ 404.1527(b), 416.927(b).[12] "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record." Revels v. Berryhill, 874 F.3d at 654; see also 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164

_____

[12]    Since Plaintiff filed his applications before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 apply.  For an application filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c would apply. 20 C.F.R. §§ 404.1520c and 416.920c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference to treating source medical opinions.  See 20 C.F.R. §§ 404.1520c(a), 416.920c(a); L.R. v. Saul, 2020 WL 264583, at *3 n. 5 (C.D. Cal. Jan. 17, 2020); Golightly v. Saul, 2020 WL 1916874, at *6 n. 5 (D. S.C. April 7, 2020); see also 82 Fed. Reg. 5844, at 5852 (January 18, 2017); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(9th Cir 2008); <u>Lester</u>, 81 F.3d at 830.  If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record for rejecting the opinion.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998); <u>Lester</u>, <u>supra</u>.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017)(citation omitted).  Finally, an ALJ may reject an opinion of any physician that is conclusory, brief, and unsupported by clinical findings.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2015); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).


        a.  *Lynda Shiatt*


    On October 13, 2015, Lynda Shiatt, a licensed clinical social worker at Aurora Family Counseling, completed a two-page statement about Plaintiff's abilities to do work-related activities on a day-to-day basis in a regular work setting.  (<u>See</u> AR 370-71).[13]  Ms. Shiatt opined, <u>inter alia</u>, that Plaintiff was "seriously limited, but not precluded,"[14]

_____

[13]   Although it is not clear from the record whether or how many times Ms. Shiatt treated Plaintiff, the Court will assume Ms. Shiatt treated Plaintiff.

[14]   "Seriously limited, but not precluded" meant the following: "[A]bility to function in this area is seriously limited and less than satisfactory, but not precluded.  This is a substantial loss of ability
                                                    (continued...)

in **her** abilities to remember work-like procedures, to understand and remember very short and simple instructions, and to carry out very short and simple instructions, explaining that "[d]epressive symptoms may impede memory."   (AR 370-71).   Ms. Shiatt further opined that Plaintiff's impairments would cause Plaintiff to be absent from work an average of about two days per month.   (AR 371).

The ALJ gave "no weight" to Ms. Shiatt's opinion, finding that she was not an acceptable medical source, and that her opinion was unsupported by the objective medical evidence and inconsistent with Plaintiff's activities of daily living. (AR 28).[15] If Ms. Shiatt was an acceptable medical source, the "specific and legitimate" standard would apply to the ALJ's rejection of Ms. Shiatt's opinion about Plaintiff's

---

[14]   (...continued)
to perform the work-related activity."   (AR 370).

[15]     Ms. Shiatt's opinion is contradicted by the opinions of other physicians - to which the ALJ gave greater weight - regarding Plaintiff's abilities to remember work-like procedures, understand, remember, and carry out very short and simple instructions, and attend work. The ALJ gave "great weight" to the undated opinion of treating psychologist, Laura Gilliom, PhD (who treated Plaintiff on four occasions from January 23, 2014 through March 19, 2014), who opined that "[a]t the time of treatment, the patient's symptoms were affecting his social and emotional functioning but were not impairing his ability to work."   (See AR 27-28, 332-33).   The ALJ gave "significant weight" to the November 7, 2015 opinion of consultative examining psychiatrist Nenita Belen, M.D., who opined, inter alia, that Plaintiff would have mild limitations in performing simple and repetitive tasks.   (See AR 28, 378-82). The ALJ also gave "significant weight" to the November 23, 2015 opinion of State Agency practitioner Paul Klein, PsyD, who found, inter alia, that Plaintiff has the ability to understand and remember and sustain concentration, persistence and pace to perform simple and detailed tasks, and the April 20, 2016 opinion of State Agency practitioner Susan Daugherty, PhD, who found, inter alia, that Plaintiff was not limited in his abilities to understand and remember and to carry out very short and simple instructions, and was moderately limited in his ability to carry out detailed instructions.   (See AR 28, 82-83, 98-100).

abilities to remember work-like procedures, to understand, remember, and carry out very short and simple instructions, and to attend work. <u>See Trevizo</u>, 871 F.3d at 675. However, since Ms. Shiatt was not an acceptable medical source, the ALJ was required to only provide a "germane reason" for rejecting Ms. Shiatt's opinion in these areas. <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1161 (9th Cir. 2014)(citation and internal quotation marks omitted)(The ALJ may discount the testimony of "other sources" if the ALJ "gives reasons germane to each witness for doing so."); <u>see also Turner v. Comm'r of Soc. Sec. Admin.</u>, 613 F.3d 1217, 1224 (9th Cir. 2010)(quoting <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

As discussed below, the ALJ provided germane reasons, supported by the record, for rejecting Ms. Shiatt's opinions.

Only "acceptable medical sources" can give medical opinions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); Social Security Ruling ("SSR") 06-03p, *2 (rescinded for claims filed after March 27, 2017, 2017 WL 3928298). A licensed clinical social worker is not an "acceptable medical source," but rather is an "other source." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)(2013); SSR 06-03p, *2; <u>but see Gomez v. Chater</u>, 74 F.3d 967, 971 (9th Cir. 1996)(a nurse practitioner could be considered a medically acceptable source where she worked under a physician's close supervision such that she acted as the physician's agent). The opinion of "other sources" cannot establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1513(a),

18

416.913(a)(2013); SSR 06-03p, *2.   However, the opinion of "other sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.  SSR 06-03p, *3; see also 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)(2013); Garrison v. Colvin, 759 F.3d 995, 1013–14 (9th Cir. 2014)("other sources" "can provide evidence about the severity of a claimant's impairment(s) and how it affects the claimant's ability to work")(citation and alterations omitted); see also 20 C.F.R. §§ 404.1527(a)(1)("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."), 406.927(a)(1) (same), 404.1527(f)(1)("Opinions from medical sources who are not acceptable medical sources . . . may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources."), 416.927(f)(1) (same).  The factors considered in weighing the opinions of "other sources" are the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization and other factors.  20 C.F.R. §§ 404.1527(f)(1), (c)(1)-(c)(6), 416.927(f)(1), (c)(1)-(6).

Here, the ALJ properly discounted Ms. Shiatt's opinion because Ms. Shiatt, as a licensed clinical social worker, was not an acceptable

medical source.[16] <u>See</u> <u>McGee v. Astrue</u>, 368 Fed.Appx. 825 (9th Cir. 2010)(An ALJ is entitled to discount the weight accorded to the opinion of a licensed clinical social worker who is not considered an "acceptable medical source"); <u>Salquero v. Astrue</u>, 2012 WL 71704, *3 (C.D. Cal. Jan. 9, 2012)("[T]he ALJ correctly found that [the licensed clinical social worker] is 'not an acceptable source of medical evidence,' and thus properly gave [the licensed clinical social worker's] opinion less weight than other qualifying medical source opinions); <u>see also</u> <u>Haagenson v. Colvin</u>, 656 Fed.Appx. 800 (9th Cir. 2016)("The only reason that the ALJ offered for rejecting their opinions is that they are not 'acceptable medical sources' within the meaning of the federal regulation. However, the regulation already presumes that nurses and counselors are non-acceptable medical sources, yet still requires the ALJ to consider them as 'other sources.'").

The ALJ properly determined that Ms. Shiatt's opinion was unsupported by the longitudinal objective medical evidence. <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)(the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"; citation omitted). The ALJ noted (<u>see</u> AR 25-26, 28-29) that while some evidence indicated that Plaintiff's mood was depressed and/or that Plaintiff complained of mental health symptoms, the majority of evidence –- Plaintiff's own statements, physical examinations, mental

---

[16]   The Court notes that Plaintiff does not allege, and the record does not show, that Ms. Shiatt worked under the close supervision of a physician and therefore should be considered a medically acceptable source.   <u>See</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012).

status examinations, and notations in progress reports -- showed that Plaintiff's mental health symptoms were consistently unremarkable, and were responsive to medication treatment, and/or stabilized with therapy. (See AR 359-61 [May 13, 2013], 363-65 [November 5, 2013], 367-69 [April 2, 2014], 335 [undated 2014], 391 [January 22, 2015], 393-95 [March 31, 2015], 349-50 [July 14, 2015], 402 [September 24, 2015], 404-05 [December 11, 2015], 409 [January 11, 2016], 412 [February 11, 2016], 463 [January 18, 2017], 465 [March 22, 2017], 469 [June 2, 2017], 471 [August 7, 2017], 473 [September 22, 2017], 475 [December 11, 2017]).[17]

The ALJ also properly found that Ms. Shiatt's opinion regarding Plaintiff's functional limitations was inconsistent with Plaintiff's activities of daily living, which included working as a home health care aid, janitor, and courier. (AR 27-28). This was supported by (1) Dr. Gilliom's undated Treatment Summary, in which Dr. Gilliom, who treated Plaintiff from January 23, 2014 through March 19, 2014, wrote: "[Plaintiff] is employed by a home health care provider and also works third shift as a janitor cleaning floors at a grocery store." (AR 332-33); (2) reports dated May 13, 2013, November 5, 2013 and April 2, 2014, in which Krichna Sowles, M.D. stated: "[Plaintiff] is currently able to do activities of daily living without limitations." (AR 359, 363, 367); and (3) a Progress Note dated December 11, 2017, in which

---

[17]    While some medical records contain conflicting information, the ALJ was entitled to resolve such conflicts.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008)("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."; citation omitted); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 603 (9th Cir. 1999)("The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity.").

Plaintiff reported that he had been working part-time with the Bank of Hemet as a courier for the past two months. (AR 475). <u>See Turner</u>, 613 F.3d at 1223-24 (the ALJ properly rejected social worker's opinion about Plaintiff's inability to work where opinion was inconsistent with evidence of the claimant's daily activities including work); <u>see also Ford v. Saul</u>, 950 F.3d 1141, 1144-45 (9th Cir. 2020)("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion.").

The Court finds that the ALJ provided germane reasons, supported by substantial evidence in the record, for rejecting Ms. Shiatt's opinion.

   b.   *Cathy Glassner*

On April 15, 2015, Cathy Glassner completed a two-page Behavioral Initial Evaluation Coordination of Care Report (<u>see</u> AR 372-73),[18] stating that Plaintiff had severe anxiety and isolation, diagnosing Plaintiff with, <u>inter</u> <u>alia</u>, major depressive affective disorder, recurrent and severe, and giving Plaintiff a current Global Assessment of Functioning (GAF) score of 47 (and a high of 51 in the last year).[19]

---

[18]   Although it is not clear from the record what Ms. Glassner's position was or whether or how many times Ms. Glassner treated Plaintiff, the Court will assume Ms. Shiatt treated Plaintiff.

[19]   "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." <u>Vargas v. Lambert</u>, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." <u>American Psychiatric Association, Diagnostic and</u>
(continued...)

1

(AR 372-73).

2

3    The ALJ gave "no weight" to the GAF score assessed by Ms. Glassner,

4    finding it to be of limited evidentiary value, inconsistent with the

5    objective medical record, and inconsistent with Plaintiff's activities

6    of daily living.  (AR 29).  As stated below, the ALJ's reasons were

7    supported by the record.

8

9    The ALJ properly found that the GAF score assessed by Ms. Glassner

10   was of limited value since such "subjectively assessed scores reveal

11   only snapshots of impaired and improved behavior" (AR 29).  See Garner

12   v. Colvin, 626 Fed.Appx 699, 702 (9th Cir. 2015)(the ALJ properly

13   discounted a therapist's singular GAF score because it "provided only

14   a snapshot impression and not a long-term prediction of RFC"); Margulis

15   v. Colvin, 2015 WL 1021117, *16 (E.D. Mar. 6, 2015)("GAF scores are

16

17

---

18       [19]  (...continued)
     Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000)
19   (hereinafter DSM-IV).   According to DSM-IV, a GAF score between 41 and
     50 describes "serious symptoms" or "any serious impairment in social,
20   occupational, or school functioning."  Id. at 34.  A GAF score between
     51 and 60 "indicates moderate symptoms (e.g., flat affect and
21   circumlocutory speech, occasional panic attacks) or moderate difficulty
     in social, occupational, or school functioning (e.g., few friends,
22   conflicts with peers or co-workers)."  Id.  "Although GAF scores,
     standing alone, do not control determinations of whether a person's
23   mental impairments rise to the level of a disability (or interact with
     physical impairments to create a disability), they may be a useful
24   measurement."  Garrison, 759 F.3d at 1003 n.4.

25       The Court notes that the DSM-V eliminated the GAF scale.  See
     Olsen v. Comm'r Soc. Sec. Admin, 2016 WL 4770038, at *4 (D. Or. Sept.
26   12, 2016)("The DSM-V no longer recommends using GAF scores to measure
     mental health disorders because of their 'conceptual lack of clarity .
27   . . and questionable psychometrics in routine practice.'"; quoting
     DSM-V, 16 (5th ed. 2013)).
28

unreliable indicators of a claimant's ability to perform sustained work, as they are 'merely a snapshot in time' that may or may not be supported by the overall medical record."; citation omitted); <u>Deck v. Colvin</u>, 588 Fed.Appx 747, 748 (9th Cir. 2014)("[T]he [GAF] score is used for treatment purposes and not for rating a person's ability to work.").

The ALJ also properly discounted the GAF score assessed by Ms. Glassner because it was unsupported by the longitudinal objective medical evidence, as discussed above, and inconsistent with Plaintiff's activities of daily living including work, as discussed above.   <u>See Madison v. Berryhill</u>, 676 Fed.Appx 633 (9th Cir. 2017)("[T]he ALJ properly discounted the global assessment of functioning (GAF) score assigned by Dr. Widlan because the extremely limited functioning reflected in the GAF score conflicted with [the claimant's] daily activities.").

The Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for rejecting Ms. Glassner's GAF score assessment.

**B.   The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Symptom Testimony**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.   <u>Id.</u> (citing <u>Garrison v.</u>

24

Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  "In this analysis, the claimant is <u>not</u> required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  <u>Id.</u> (emphasis in original)(citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  <u>Id.</u> (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  <u>Id.</u> (citation omitted); <u>see also</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996)("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.").  "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases."  <u>Garrison</u>, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine

the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[20] SSR 16-3p eliminated the term "credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit Court of Appeals has noted that SSR 16-3p:

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p)(alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating

---

[20] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's May 10, 2019 denial of Plaintiff's request for review. Nevertheless, the regulations on evaluating a claimant's symptoms, including pain, see 20 C.F.R. §§ 404.1529 and 416.929, have not changed.

and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, supra. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015)("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."; citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

1.   Plaintiff's Subjective Statements and Testimony

Plaintiff submitted an Adult Function Report, dated August 30, 2015, (see AR 280-88), stating that his ability to work is limited by his panic attacks, anxiety, depression, inabilities to focus on

27

instructions or concentrate, and tremors.[12]  (AR 280).  His conditions
affect his abilities to talk, hear, remember, complete tasks,
concentrate, understand, and follow spoken instructions.  He can walk
about a mile before needing to rest and is unable to resume walking
until the next day).  (AR 285).  His daily activities include feeding
and walking his dog, eating waffles, returning to bed (he has trouble
sleeping at night), listening to the radio, and doing some house
cleaning.  As a result of his conditions, he is no longer able to
function in most environments, do hobbies such as reading, coin
collecting, model building, woodworking and swimming (due to lack of
motivation), shop, fix complete meals (he forgets to turn off the oven),
barbecue (he is afraid), participate in social events, including
birthday parties (he feels overwhelmed when around too many people), and
use a checkbook and money orders.  (AR 281-82, 284-85).  He can take
care of his personal needs and grooming without special reminders (his
girlfriend has to remind him to take his medicine), prepare simple meals
twice a day, clean bathrooms, sweep, mop and dust, and he needs to be
reminded to do his chores.  (AR 282).  He goes outside one to two times
a day, walking or driving a car or riding in a car.  (AR 283).  He shops
in stores for groceries once a month, and is not able to handle a
savings account or use a checkbook and money orders (he does not
understand checkbooks and money orders).  (<u>Id.</u>).  He spends time with

---

[12]     In an undated Disability Report – Appeal, Plaintiff stated he
takes the following prescribed medications: Atenolol, for tremors; baby
aspirin, for heart regulation; Sertraline, for depression and anxiety;
Simvastatin, for cholesterol; Temazepam, for sleep; and Xanax, for
depression and anxiety.  (AR 254; <u>see</u> <u>also</u> AR 324 [Plaintiff's
Medications dated January 23, 2018:  eliminated Atenolol, Simvastatin,
and Temazepam, and added Fenobibrate, for cholesterol, Propranolol, for
tremors, Trazadone, for sleep, Buspirone, for anxiety, Pramipexote, for
restless leg syndrome, and Tamsulosin, for prostate]).

other people every day -- he daily texts his children, he sometimes goes on Facebook, and his girlfriend goes over to see him daily.  (Id.).  He needs to be reminded (through his own written notes) to go to doctor and therapy appointments.  (AR 284).  He does not handle stress or changes in routine well.  (AR 286).

    At the April 24, 2018 administrative hearing, Plaintiff testified that in January 2013, he was not able to work because of worsening tremors (he has had tremors all his life), depression, memory issues, and anxiety.  (AR 44, 47).  He has received mental health treatment and the medication he takes for anxiety helps "somewhat," the medication he takes for anger and impulsivity (Sertraline) has helped, and medication helps control his tremors "to an extent."  (AR 45, 49, 52-53, 55-56).  Although he has done several part-time jobs since January 2013, he had to stop those jobs because of problems with concentration, memory (he cannot remember directions), multitasking and keeping up with the fast pace.  (AR 45-48, 51-52).  He is not able to work a full-time job because of anxiety and panic attacks.  (AR 47).  A typical day consists of getting out of bed, sitting in his recliner, looking at the internet on his phone, feeding his dogs and trying to keep the house clean.  He generally does not go outside the house unless he has a doctor's appointment (he is scared to drive because it is "taking your life in your own hands"), and he does not have much of a social life (in the past he socialized with work friends).  (AR 47-49, 54).  He uses a rescue inhaler for his chronic obstructive pulmonary disease.  (AR 54-55).  Although a treatment note dated February 27, 2017 states he could

walk his dog 2 to 3 miles a day and climb several flights of stairs, he can no longer walk his dog far or climb flights of stairs because of his worsening COPD ("The rescue inhaler helps but I'm still limited."). (AR 55).  Hearing aids help his hearing.  (AR 56).

    2.   <u>The ALJ's Credibility Findings</u>

The ALJ found that the "objective medical evidence and other evidence in the record shows that [Plaintiff's] symptoms do not reduce [Plaintiff's] capacity to perform work-related activities to the extent that [Plaintiff] alleges." (AR 24).  Without separately discussing Plaintiff's testimony, the ALJ determined that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms was inconsistent with the objective medical evidence, Plaintiff's ability to perform activities of daily living, evidence suggesting that Plaintiff had not worked for a reason unrelated to his impairments, and the improvement of Plaintiff's symptoms with medication and treatment. (AR 24-27, 30; <u>see</u> Joint Stip. at 19-21).

After addressing, <u>inter alia</u>, the opinions of Plaintiff's treating psychologist, the consultative psychological examiner, the State Agency medical and psychological consultants, and licensed clinical social workers, as well as statements by Plaintiff's friend and girlfriend (<u>see</u> AR 27-29), the ALJ concluded that:

30

In sum, the above residual functional capacity assessment is supported by the overall evidence of record. The objective medical findings do not support the degree of limitation alleged. Medication compliance and other routine treatment measures such as therapy sessions have improved the claimant's condition. [AR 335, 463, 465, 467, 469, 471, 473, 475]. Although the combined effects of the claimant's impairments are expected to cause limitation of function, the claimant has retained the capacity to do work-related activities as detailed in the claimant's residual functional capacity. I find the claimant's residual functional capacity assessment is supported by the objective medical evidence and the record considered as a whole.

(AR 30).

3.   Analysis

The ALJ properly determined that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms resulting from his physical impairments and mental impairments were not supported by the objective medical evidence (see AR 23-26). See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it

is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

Here, the ALJ properly found (see AR 24-25), that Plaintiff's testimony regarding his functional limitations was not supported by (1) objective medical evidence concerning Plaintiff's physical impairments of COPD and dyspnea, as discussed above, (see AR 346, 350, 360-61, 364, 391, 402, 405, 409, 412, 437, 440, 449, 452, 455, 457-59, 480, 482, 488, 492-93, 498, 505, 516, 520, 524, 527, 533); (2) objective medical evidence concerning Plaintiff's physical impairment of presbycusis bilateral ears (hearing loss), (see AR 363, 368, 450 [May 13, 2013 and November 5, 2013 notations that Plaintiff denied hearing loss], 360 [April 2, 2014 physical examination of the ears revealed no tenderness of the left external auditory canal, no tenderness but cerumen impact of the right external auditory canal, and scarring of the right tympanic membrane], 516, 520 [November 7, 2016 and January 31, 2017 physical examinations revealed normal right and left ears and ear canals and hearing], 441, 444, 447 [February 27, 2017, May 1, 2017, and May 22, 2017 notations that Plaintiff denied decreased hearing], 437 [May 24, 2017 physical examination revealed ears within normal limits and Plaintiff wearing bilateral hearing aids], 450 [August 8, 2017 notation

that Plaintiff denied decreased hearing]); and (3) objective medical evidence concerning Plaintiff's mental impairments, as discussed above, (see AR 335, 349-50, 359-61, 363-65, 367-69, 391, 393-95, 402, 404-05, 409, 412, 463, 465, 467, 469, 471, 473, 475).

The ALJ's determination that Plaintiff's alleged functional limitations were not supported by the objective medical evidence was a clear and convincing reason for discounting Plaintiff's testimony. As discussed below, this was not the sole legally sufficient reason for discounting Plaintiff's testimony.

The ALJ properly determined that Plaintiff's alleged functional limitations from his physical and mental impairments were inconsistent with his ability to perform his activities of daily living, including working and exercising (see AR 359, 363, 367 [May 13, 2013, November 5, 2013, and April 2, 2014 notations that Plaintiff is able to do activities of daily living without limitations], 332-33 [undated 2014 notation that Plaintiff employed as a health home care provider and as a janitor], 440 [February 26, 2017: Plaintiff reported he "[w]alks dog 2-3 miles per day" and is "[a]ble to climb 2-3 miles per day"], and 475 [December 11, 2017: Plaintiff reported working at the bank of Hemet for 2 months]). Plaintiff's ability to engage in such activities rendered Plaintiff's testimony that he spent most of the day doing minimal activity/sitting (see AR 48) unbelievable. See Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)("[T]he ALJ may

discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting;" "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); and <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Contrary to Defendant's assertion (<u>see</u> Joint Stip. at 20), the ALJ's finding that evidence suggesting that Plaintiff had not worked for a reason unrelated to his impairments (<u>see</u> AR 26) was not a proper reason to discount Plaintiff's testimony.  The ALJ noted (<u>see</u> AR 26), that Plaintiff reported he was applying for a teacher's aide position to enhance his finances and social functioning (AR 463 [Progress Note dated January 18, 2017]), and that he had been working part-time with the Bank of Hemet as a courier for the past two months (AR 475 [Progress Note dated December 11, 2017]), but the ALJ failed to explain how those notations indicate that Plaintiff was unable to work for a non-impairment-related reason, during specific periods (i.e., January 2017 and the two months prior to December 2017) or for the entire period in question (January 30, 2013 through August 10, 2018).  <u>See</u> <u>Webb v. Barnhart</u>, 433 F.3d 683, 688 (9th Cir. 2005)("That [the claimant] sought employment suggests no more than that he was doing his utmost, in spite

34

of his health, to support himself."). Indeed, at the hearing the ALJ did not ask Plaintiff about his application to be a teacher's aide.

Finally, the ALJ properly determined that Plaintiff's testimony about his alleged limitations resulting from his physical and mental impairments was inconsistent with evidence that Plaintiff's symptoms have improved with medication and routine treatment (AR 30 ["Medication compliance and other routine treatment measures such as therapy sessions have improved the claimant's condition."]). See SSR 16-3p, *7-*8 (the effectiveness of medication is one factor to be considered in evaluating the intensity, persistence and limiting effects of an individual's symptoms); Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017)("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

As the ALJ noted (see AR 30), Plaintiff's physical and mental health symptoms improved with medication and therapy. (See AR 359, 363, 367 [May 13, 2013, November 5, 2013 and April 2, 2014 notations as to depression, tremors and/or insomnia: "By report there is good compliance with treatment, good tolerance of treatment and fair symptom control"], 335 [undated 2014: "Therapy [which began on June 26, 2014 for depressed mood, anxiety and difficulty adjusting to recent life changes] was terminated on 8/7/14 after client had stabilized."], 404-05 [December 11, 2015: Plaintiff reported that the increased monthly dose

of Zoloft provided relief], 463, 464, 596, 475 [January 18, 2017, March 22, 2017 June 2, 2017, and December 11, 2017 notations that Plaintiff's mental condition was responding gradually to treatment], 449 [August 28, 2017: Plaintiff stated he was having shortness of breath due to a cholesterol medication but that his shortness of breath has improved with another cholesterol medication]).

The Court finds that the ALJ's reasons for discounting Plaintiff's testimony concerning the limiting effects of his pain and symptoms -- lack of support in the medical record, inconsistency with activities of daily living, and improvement with medication and routine treatment -- were specific, clear and convincing reasons, supported by substantial evidence in the record. In light of the valid reasons the ALJ provided, the ALJ's error in discounting Plaintiff's testimony based on his finding that Plaintiff had not worked for a reason other than medical impairments is harmless. See Carmickle, 533 F.3d at 1162 (the ALJ's error in giving two invalid reasons for partially discrediting the claimant's testimony was harmless where the ALJ gave valid reasons for partially discrediting the claimant's testimony); see also Tommasetti, 533 F.3d at 1038 (an ALJ's error is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'").

//

//

//

**C.   The ALJ Properly Determined that Plaintiff Could Perform the Laundry Worker Job**

Plaintiff asserts that the ALJ erred at step five in determining that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically, hand launderer, laundry sorter and laundry worker, based on the ALJ's RFC determination concerning environmental limitations ("avoidance of more than occasional exposure to extreme cold, heat, humidity, loud noise, and irritants such as fumes, odors, dust, gases, chemicals, and poorly ventilated spaces," AR 23).   According to Plaintiff, "[t]hese three occupations involve working in either a laundry[] or apparently a dry cleaning facility and all are going to expose [Plaintiff] to environmental factors which are precluded by the ALJ's own [RFC] assessment." (See Joint Stip. at 21-23; see also Joint Stip. at 6).[13]

Defendant asserts that, since the ALJ properly determined that Plaintiff can perform the job of laundry worker based on his RFC, any error in the ALJ's findings that Plaintiff can perform the jobs of hand launderer and laundry sorter is harmless.  (See Joint Stip. at 23-24).

At step five of the sequential evaluation process, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations." Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation omitted).  In making this finding, the ALJ

---

[13]   Plaintiff challenges the ALJ's step five determination based only on the environmental limitations contained in the RFC.

determines "whether, given the claimant's RFC, age, education, and work experience, he actually can find some work in the national economy." Id. at 846 (citation omitted).  The Commissioner may meet this burden by adopting the testimony of a VE or by reference to the Grids.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "In making this determination, the ALJ relies on the [Dictionary of Occupational Titles (DOT)], which is the [Agency's] primary source of reliable job information regarding jobs that exist in the national economy." Zavalin, 778 F.3d at 845–46 (citation omitted); see SSR 00-4p, *2 ("In making disability determinations, [the Agency relies] primarily on the DOT . . . for information about the requirements of work in the national economy.").

    At the hearing, the VE testified that a hypothetical person wth Plaintiff's age, education, work history experience and RFC could perform the following jobs: (1) hand launderer [DOT 361.684-010, medium work, SVP 2, 97,000 jobs nationally]; (2) laundry sorter [DOT 369.687-04, medium work, SVP2, 59,000 jobs nationally]; and (3) laundry worker [DOT 361.684-014, medium work, SVP 2, 181,000 jobs nationally]. (See AR 59-60).  The ALJ found this testimony to be consistent with the information in the DOT, and determined that, considering Plaintiff's age, education, work experience and RFC, Plaintiff is capable of performing the three jobs.  (AR 31).

    DOT 361.684-014 describes the laundry worker I job as follows: "Washes and irons wearing apparel, sheets, blankets, and other linens and clothes used by employees of logging, construction, mining, or other

camp, or washes uniforms, aprons, and towels in establishments supplying employees with these lines.  Uses equipment usually found in household or in small laundry."

Although Plaintiff contends that he is not capable of performing the laundry worker job because it "would clearly expose [Plaintiff] to **more than** occasional humidity," (Joint Stip. at 22, bolded for emphasis), DOT 361.684-014 states that the laundry worker job requires occasional (exists up to 1/3 of the time) exposure to wetness and/or humidity.  Accordingly, the Court cannot find that there is a conflict or inconsistency between the DOT and the VE's testimony that Plaintiff could perform the laundry worker job.

The Court finds that the ALJ properly determined that, based on Plaintiff's age, education, work experience and RFC, Plaintiff can perform the laundry worker job.

As Respondent asserts (see Joint Stip. at 24), the ALJ's determination that Plaintiff can perform the laundry worker job renders any error by the ALJ in determining that Plaintiff can perform the jobs of hand launderer and laundry sorter harmless.  See Tommasetti, supra; Thomas v. Comm'r of Social Sec. Admin., 480 Fed.Appx. 462, 464 (9th Cir. 2012)("Even if [the claimant] cannot perform the jobs of appointment clerk or assembler, she could perform the job of housekeeper cleaner, which existed in significant numbers in the national economy.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ORDER**

For the foregoing reasons, the decision of the Commissioner is
AFFIRMED.


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: November 20, 2020

                                    /s/
                         _____
                              ALKA SAGAR
                         UNITED STATES MAGISTRATE JUDGE

40